UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
VICTOR WRIGHT,

        Petitioner,

  -against-

                                 **MEMORANDUM AND ORDER**

UNITED STATES OF AMERICA,    10-CV-5694 (FB)

        Respondent.
------------------------------------------------------x

*Appearances:*
*For the Petitioner:*                                 *For the Respondent:*
VICTOR WRIGHT, *pro se*                  LORETTA LYNCH
MDC Brooklyn                                       United States Attorney
P.O. Box 329002                                  Eastern District of New York
Brooklyn, NY 11232-9002                By:  CAROLYN POKORNY, ESQ.
                                                      Assistant United States Attorney
                                               271 Cadman Plaza East
                                               Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

Petitioner Victor Wright ("Wright"), proceeding *pro se*, seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, his petition is denied.

## I.

Following a jury trial, Wright was convicted of conspiracy to distribute heroin and cocaine, possession of heroin with intent to distribute, and engaging in monetary transactions in criminally derived property worth more than $10,000. On June 4, 2008,

the Court sentenced him principally to two concurrent mandatory terms of life imprisonment.[1] His conviction and sentence were affirmed on appeal. *See United States v. Wright*, 341 F. App'x 709 (2d Cir. 2009), *cert. denied*, 558 U.S. 1101 (2009).

In his § 2255 petition, Wright contends that he received ineffective assistance of counsel from three different attorneys who represented him during various stages of his criminal case. First, Wright claims that he received ineffective assistance from attorneys Neil Checkman ("Checkman") and Harry Batchelder ("Batchelder") during plea negotiations prior to trial. Second, he claims that Batchelder failed to conduct a necessary pre-trial investigation and made various errors during the trial itself. Finally, he claims that James Neuman ("Neuman"), his appellate counsel, failed to raise on appeal errors made by the Court during plea negotiations.

## II.

To prevail, Wright must show "(1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice." *United States v. Jones*, 482 F.3d 60, 76 (2d Cir. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reviewing court must indulge a strong presumption that counsel's [performance] falls within the wide range of reasonably professional

---

[1] The life sentences were mandatory because the government filed a prior felony information pursuant to 21 U.S.C. § 851 based on Wright's multiple prior narcotics convictions.

2

assistance." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004).  Prejudice is shown only if "there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different." *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

**A.     Pre-Trial Plea Negotiations**

Wright first claims that Checkman "advised [him] not to accept a 10 year plea offer . . . and instead tried to persuade [him] to accept a 20 year plea offer." *See* Wright Petition at 14.  Wright further claims that Checkman refused to inform the government that he had accepted the 10-year deal.

Wright's claims are refuted by the record.  In January 2005, a federal grand jury indicted Wright on racketeering, homicide, drug trafficking, drug possession, and money laundering charges.  On April 14, 2006, the government moved to dismiss the racketeering and homicide charges on the grounds that "[p]roceeding with the . . . charges at this time would jeopardize an important investigation in another district and endanger witnesses for that case." *See* Letter Motion to Dismiss Certain Charges of the Indictment (April 14, 2006) at 2.  On April 19, 2006, the Court granted the motion without prejudice to the government's right to re-file at a later date, and the government filed a superseding indictment on April 21, 2006, that contained only the remaining drug-related charges.  The Court subsequently held three hearings during which

3

Wright's plea negotiations were discussed extensively.

At the first hearing, on April 24, 2006, the government explained that it had offered Wright two plea deals. The first offer was for 10 years, but covered only the drug-related charges in the superseding indictment. The second was for 20 years, and covered both the pending charges in the superseding indictment and the contemplated re-indictment of the racketeering and homicide charges. Checkman confirmed that he had counseled Wright to reject the 10-year offer but accept the 20-year deal, stating that "[t]he longer plea offer . . . [w]ould have left the defendant in position to have resolved all of his charges" but "[t]he ten year does not do that." *See* Transcript of April 24, 2006 Hearing at 8:21-9:3. When the government indicated that it might be willing to offer Wright a deal for 18 ½ years, the Court recessed the hearing to permit Checkman to discuss the offer with Wright. After the recess, the Court asked Wright whether he understood the plea offers, and Wright replied "Yes, I do." *See id.* at 23:17. The Court then adjourned the hearing to permit the government to obtain the necessary approval for the new plea offer.

At the second hearing, on April 27, 2006, the government notified the Court that it had obtained approval for the 18 ½ year plea offer. However, Checkman stated that Wright had concerns about the "coverage" of the new plea offer. *See* Transcript of April 27, 2006 Hearing at 7:18-25. When questioned by the Court, Wright revealed that he would be unable to plead to the conspiracy count because "Mr. Checkman

4

explained to me that [pleading to conspiracy with others] would include everyone that's on the indictment. That would be a lie. I would have to perjure myself in order to plead guilty to that." *See id.* at 6:1-2. After the Court explained that Wright was not required to name particular co-conspirators but was only required to allocute to conspiracy with others, Wright stated, "[t]hen I have to go trial." *See id.* at 9:9. The Court asked whether Wright was "really clear-headed" about rejecting the plea. *See id.* at 9:13-14. After further colloquy, Wright stated that he had "no choice but to accept the plea. For the record, I am not guilty. I am going to plead guilty because as my attorney explained to me, it's a business decision." *See id.* at 11:17-20. After the Court rejected the plea, Wright stated that he wanted to discharge Checkman and proceed to trial without an attorney.

At the third hearing, on May 4, 2006, Wright reiterated his desire to proceed to trial *pro se*. When the Court asked Wright whether he had reconsidered the plea offers, Wright stated unequivocally that "[t]he plea offer was always unacceptable." *See* Transcript of May 4, 2006 Hearing at 16:13-14.

The record clearly demonstrates that Wright cannot meet his burden of proving "a reasonable probability that but for counsel's deficient performance, he would have pled guilty instead of going to trial." *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011). During these three hearings, Wright persistently rejected the government's plea offers and maintained both his innocence and his desire to go trial. Since Wright

5

cannot demonstrate that he was prejudiced by Checkman's performance during plea negotiations, his first ineffective assistance claim must fail.

Wright argues that Batchelder, who was appointed to represent Wright in June 2006, also provided ineffective assistance of counsel by preventing Wright from pleading guilty. This claim is similarly meritless. At a status conference on September 21, 2006, Wright informed the Court through counsel that he "wishe[d] to proceed to trial in this matter." Transcript of September 21, 2006 Hearing at 3:10-11. When the Court inquired as to whether plea negotiations were ongoing, the government said that it was "open to plea discussions" but the plea offer had been withdrawn because "Mr. Wright . . . had negotiated a very fair offer and now he's saying that [it] is not a good starting point." *See id.* at 4:2-8. Given Wright's history of vacillation throughout the plea negotiation process, as well as his insistence that he was innocent, the Court concludes that Wright cannot demonstrate a reasonable probability that he would have pleaded guilty but for Batchelder's performance.

**B.    Pre-Trial Investigation**

Wright claims that Batchelder failed to interview an unnamed witness who would have refuted the prosecutor's claims about a "key meeting." However, Wright fails to identify this witness or specify what meeting he is referring to. Conclusory allegations that are entirely unsupported by objective evidence cannot sustain a claim for ineffective assistance of counsel. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977)

(holding that "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal").

Moreover, given that Wright was charged with a conspiracy spanning several years, his contention is irrelevant. The government's case did not rise and fall on a single meeting or transaction, and so interviewing a witness about one meeting – assuming such a witness even existed – would most likely have been useless. *See Strickland*, 466 U.S. at 691 (noting that "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless . . . counsel's failure to pursue those investigations may not later be challenged as unreasonable.").

## C. Trial

Wright argues that Batchelder provided ineffective assistance of counsel by making three critical errors during trial.[2] The first such error, contends Wright, was Batchelder's failure to adequately cross-examine two witnesses, Juan Romano and Terrence Terrell.

This claim is without merit. Batchelder vigorously cross-examined Romano, questioning him about his false claim to have attended Villanova University, about

---

[2]Wright couches two of these claims as attacks on his appellate counsel for not raising the claims on appeal. However, if trial counsel was not ineffective, appellate counsel cannot be faulted for failing to raise the issues on appeal. *See Aparicio v. Artuz*, 269 F.3d 78, 99 n.10 (2d Cir. 2001) (noting that "[since] Petitioner's trial counsel was not ineffective . . . Petitioner's appellate counsel was not ineffective for failing to raise the ineffectiveness of trial counsel."). The Court will therefore construe these claims as an attack upon trial counsel's performance.

7

providing a false date of birth during an arrest, about his cooperation agreement with the government, and about numerous inconsistencies in his testimony. *See* Trial Transcript at 217-45, 247-65. Similarly, Batchelder subjected Terrell to withering questioning about his life-long involvement in heroin and cocaine trafficking, his myriad parole violations and history of lying, his own cooperation agreement with the government, and his involvement in a murder and burglary. *See id.* at 405-55. In sum, Batchelder's cross-examinations of Romano and Terrell were exemplary and in no way "fell below an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 688.

Wright next complains that Batchelder failed to object to hearsay evidence, namely "Terrence Terrell's testimony about what he had been told." *See* Wright Petition at 15. While Wright fails to identify the objectionable testimony, the Court presumes he is referring to Terrell's testimony about statements made by co-conspirators in drug trafficking and other criminal activities. However, statements of co-conspirators are not hearsay under the Federal Rules of Evidence. *See* FED. R. EVID. 801(d)(2)(E). Since the objection would have been fruitless, "the failure to so object is not evidence of ineffective assistance of counsel." *Duncan v. Griener*, No. 97-cv8754, 1999 WL 20890, at *11 (S.D.N.Y. Jan. 19, 1999).

Wright's third claim – that "trial counsel opened the door to a damaging line of questioning that had previously been barred by the court" – is similarly lacking in

8

merit. *See* Wright Petition at 15. Though Wright again provides no citation to relevant testimony, he appears to be referring to a line of impeachment cross-examination that opened the door to questioning by the government about Wright's prior incarceration in 2001. The government's questioning was brief, however, and the Court gave a strong curative instruction that Terrell's testimony on this point was not introduced for its truth. The Court concludes that Batchelder's questioning was a reasonable strategic attempt to impeach Terrell's credibility that is entitled to deference, and is not ineffective assistance of counsel. *See United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (noting that "the conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and [a court] should not second-guess such decisions unless there is no strategic or tactical justification for the course taken.").

**C.    Appeal**

Finally, Wright argues that Neuman, his appellate counsel, failed to challenge on appeal two alleged errors made by the Court during plea negotiations. First, Wright argues that Neuman should have challenged the Court's refusal to accept his guilty plea on April 27, 2006. It is well established, however, that "there is . . . no absolute right to have a guilty plea accepted." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Rather, "[i]f the court has reasonable grounds for believing that acceptance of the plea would be contrary to the sound administration of justice, it may reject the plea." *United States v. James*, 520 F. App'x 41, 43-44 (2d Cir. 2013) (citing *United States v.*

9

*Severino*, 800 F.2d 42, 46 (2d Cir. 1986)).

Here, the Court gave Wright several opportunities to plead guilty at the April 27, 2006 hearing, but Wright first refused to plead to certain essential elements of the indictment, then stated that he was actually innocent but wanted to plead guilty simply as a "business decision." Transcript of April 27, 2006 Hearing at 11:17-20. Since the Court correctly rejected Wright's plea as factually insufficient, Neuman was not ineffective when he did not raise this issue on appeal. *See United States v. Navedo*, 516 F.2d 293, 297 (2d Cir. 1975) (district court did not abuse its discretion by rejecting guilty plea of defendant charged with conspiracy where defendant did not admit to conspiring with others).

Finally, Wright contends that the Court improperly participated in plea negotiations in violation of Rule 11 of the Federal Rules of Criminal Procedure. However, while Rule 11 prohibits the trial court's participation in plea negotiations in a substantive respect, it does not prohibit the trial court from taking a supervisory role in such proceedings. *See Fama v. United States*, 901 F.2d 1175, 1179 (2d Cir. 1990) ("it is evident, upon a fair reading of the record, that Judge Sifton was involved in the plea discussions only in a procedural, supervisory role, and not in any substantive respect.").

Here, the Court did not participate in plea negotiations between Wright and the government, but rather took steps to ensure that Wright understood the potential

penalties he faced, both under the terms of the plea offers and if convicted after trial. In view of Wright's conflicting remarks about wanting to plead guilty, his professed confusion about the nature of the sentence he was facing, and his professed dissatisfaction with his lawyers, the Court's steps were entirely proper. Since Wright has failed to present any arguments that would change the Second Circuit's findings, his ineffective assistance of appellate counsel claim must also be denied.

## III.

For the foregoing reasons, Wright's motion to vacate his sentence pursuant to § 2255 is denied. As he has not made a substantial showing of a denial of his constitutional rights, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

**SO ORDERED.**

/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 2, 2014

1